IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

ARTHUR ENLOE, et al.,                    )
                                          )
        Plaintiffs                        )
                                          )
        v,                                )        Civil Action No. 5-11CV0026-C
                                          )
BARACK OBAMA, et al.,                     )
                                          )
        Defendants                        )
_____  )

BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OR ALTERNATIVELY
A STATEMENT PURSUANT TO 28 U.S.C. § 1292(b)

# TABLE OF CONTENTS

1.    Plaintiffs' Motion For Summary Judgment Should Be Denied
      Because The Action Should Instead Be Dismissed For
      The Reasons Stated In Defendants' Motion To Dismiss .................................................... 1

2.    Plaintiffs Have Failed To Prove That They Have
      Standing To Challenge The "Entirety," Or Even
      A Single Provision, Of The Affordable Care Act ............................................................ 4

      a.    The Individual Plaintiffs Have Not Proven That They Have Standing ................ 4

      b.    Liberty Legal Foundation Has Not Proven That It Has Standing ........................ 7

      c.    Even If Plaintiffs Had Demonstrated Standing With Respect
            To One Or More Provisions Of The Affordable Care Act,
            That Would Not Provide Standing To Challenge Other
            Provisions Of The Act Or To Challenge The Act In Its Entirety ...................... 12

3.    This Court Should Neither Overrule The Supreme Court's
      Unanimous Decision in *Wickard v. Filburn* Nor Hold The
      Entirety Of The Affordable Care Act Unconstitutional .................................................. 13

4.    Plaintiffs' Alternative Motion For § 1292(b) Certification
      Need Not Be Reached And Should Not Be Granted ...................................................... 16

CONCLUSION .................................................................................................................. 16

i

# TABLE OF AUTHORITIES

## CASES

*Acree v. Air Line Pilots Ass'n*,
  390 F.2d 199 (5th Cir. 1968) ............................................................. 2

*Association of American Physicians & Surgeons v. Texas Medical Bd.*,
  627 F.3d 547 (5th Cir. 2010) ............................................................. 10

*Auto Workers v. Brock*,
  477 U.S. 274 (1986) ..................................................................... 11, 12

*Baldwin v. Sebelius*,
  2011 WL 3524287 (9th Cir. Aug. 12, 2011) ........................................... 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 5

*Bellow v. Dep't of Health and Human Services*,
  2011 WL 2462205 (E.D. Tex. June 20, 2011) ........................................ 6

*Bldg. & Constr. Trades Council v. Downtown Dev., Inc.*,
  448 F.3d 138 (2nd Cir. 2006) ........................................................... 10

*Cf. Washington Legal Foundation v. Leavitt*,
  477 F. Supp. 2d 202 (D.D.C. 2007) .................................................... 11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ......................................................................... 4

*Davis v. Federal Election Comm'n*,
  554 U.S. 724 (2008), *quoting Lewis v. Casey*, 518 U.S. 343 (1996) ................... 12

*Fleck & Associates v. City of Phoenix*,
  471 F.3d 1100 (9th Cir. 2006) .......................................................... 10

*Florida ex rel. Attorney General v. Dep't of Health and Human Services*,
  648 F.3d 1235 (11th Cir. 2011) ...................................................... 6, 14

*Hernandez v. Yellow Transportation, Inc.*,
  641 F.3d 118 (5th Cir. 2011) ............................................................. 7

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
  425 U.S. 738 (1976) ............................................................ 15

*Humane Society v. Hodel*,
  840 F.2d 45 (D.C. Cir. 1988) ...................................... 10, 11

*Hunt v. Washington State Apple Advertising Comm'n*,
  432 U.S. 333 (1977) ......................................... 10, 11, 12

*Hutto v. Davis*,
  454 U.S. 370 (1982) ............................................................ 14

*Keene v. Consolidation Coal Co.*,
  645 F.3d 844 (7th Cir. 2011) .......................................... 13

*Liberty Univ. v. Geithner*,
  2011 WL 3962915 (4th Cir. Sept. 8, 2011), *petition for cert. filed*, No.
  11-438 (U.S. Oct. 7, 2011) ........................................... 3, 14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................. 6

*Napper v. Anderson, Henley, Shields, Bradford & Pritchard*,
  500 F.2d 634 (5th Cir. 1974) ............................................. 2

*New Jersey Physicians, Inc. v. President of the United States*,
  2011 WL 3366340 (3d Cir. Aug. 3,  2011) ........................... 5

*Shreeve v. Obama*,
  201 WL 4628177 (E.D. Tenn. Nov. 4, 2010) ............ 1, 2, 5, 6, 11

*Summers v. Earth Island Institute*,
  555 U.S. 488, 129 S. Ct.1142 (2009) ................................ 7, 8

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .............................................................. 2

*Wickard v. Filburn*,
  317 U.S. 111 (1942) ................................................. 13, 14, 15

## STATUTES

An Act to Encourage Vaccination, ch. 37, 2 Stat. 806 (1813) (repealed 1822) ........................ 15

iii

26 U.S.C. § 223 ......................................................................................................... 9

26 U.S.C. § 5000A .................................................................................................. 14

26 U.S.C. § 5000B .................................................................................................... 3

26 U.S.C. § 7421(a) .................................................................................................. 3

28 U.S.C. § 1292(b) ................................................................................................ 16

28 U.S.C. §1391(e) .................................................................................................... 3

## FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ. P.  56 (c)(2) ........................................................................................... 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ARTHUR ENLOE, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v, | ) | Civil Action No. 5-11CV0026-C |
| | ) | |
| BARACK OBAMA, et al., | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OR ALTERNATIVELY
A STATEMENT PURSUANT TO 28 U.S.C. § 1292(b)

1.    Plaintiffs' Motion For Summary Judgment Should Be Denied
      Because The Action Should Instead Be Dismissed For
      The Reasons Stated In Defendants' Motion To Dismiss

Defendants explained in their pending motion to dismiss several reasons why this action

must be dismissed.  Each of these reasons also precludes summary judgment for plaintiffs.

First, the issue-preclusive effect of the no-jurisdiction determination in plaintiffs' prior

suit, *Shreeve v. Obama*, 201 WL 4628177 (E.D. Tenn. Nov. 4, 2010), compels the conclusion

that there is likewise no jurisdiction in this action raising the same claims.

In opposing defendants' motion, plaintiffs argued that the claims of persons who were

not parties in plaintiffs' first action are not barred.  Pls' Opp'n to Mot. to Dismiss (ECF # 16) at

8-9.  That is irrelevant to plaintiffs' action.  Every individual plaintiff who is a party here was

also a party in *Shreeve*, and the claims of all those plaintiffs are barred.

It is of no moment that plaintiff Liberty Legal Foundation ("Liberty Legal") was not

itself a formal party in the prior case.  As we explain in point 2 below in more detail, its claim to

standing is derivative of the standing of members that it identifies, and the only identified members are the individual plaintiffs who were parties in the prior case and whose claims are barred.  Standing in the shoes of those who themselves have nowhere to stand does Liberty Legal no good, so the issue preclusive effect of the prior judgment on Liberty Legal's identified members' standing likewise bars Liberty Legal's action.  Moreover, both as counsel for the plaintiffs in *Shreeve* and as the entrepreneur that sold the *Shreeve* plaintiffs the right to be listed as *Shreeve* plaintiffs, Liberty Legal thoroughly controlled the litigation in *Shreeve*.[1]  It is thus bound by that prior litigation because of its privity with the formal parties.  *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).

Plaintiffs also suggest that issue preclusion on jurisdictional issues can only apply in the very same court that issued the first ruling.  Pls' Opp'n to Mot. to Dismiss (ECF # 16) at 11-12.  That is wrong, as two Fifth Circuit cases our brief cited demonstrate.  *Acree v. Air Line Pilots Ass'n*, 390 F.2d 199 (5th Cir. 1968); *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 637 (5th Cir. 1974).

Second, venue in this action is improper.  The sole connection between this district and any of the parties or claims remains the residence of Arthur Enloe, and he has still not even alleged, much less shown, that he is injured in any way by the Patient Protection and Affordable Care Act (hereafter "Affordable Care Act" or "Act").  Even if Enloe had made such a showing,

---

[1] Liberty Legal's control over the litigation, control beyond what is usual even for counsel, is evident from its current website, and even more evident from its website as it existed at the time *Shreeve* was being litigated. *See* http://www.libertylegalfoundation.net/obamacare-class-action// (last visited October 19, 2011) (Obamacare class action page from current version of website); http://web.archive.org/web/20101014031229/http://www.libertylegalfoundation.com/ ("Overturn Obamacare" webpage from Oct. 14, 2010) (Exhibit 1), Appendix at 2-3.

as we explained, residence of merely one plaintiff is not a proper basis for venue.  28 U.S.C. § 1391(e).

Third, as plaintiffs have now conceded, Pls' Opp'n to Mot. to Dismiss at 21-22, their claims against defendants Obama, Reid, and Pelosi are barred by Presidential Immunity (with respect to Obama) and the Speech or Debate Clause (with respect to Reid and Pelosi)

Fourth, this is an action to restrain the assessment or collection of taxes and is thus barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a).  Plaintiffs argue that a challenge to one pro-vision of the Affordable Care Act that has been challenged in many other cases, the minimum coverage provision (sometimes known as the individual mandate), would not be barred by the Anti-Injunction Act.  Pls' Opp'n to Mot. to Dismiss at 20-21.  If that were the only provision at issue here, defendants would agree that the Anti-Injunction Act would not apply.  *But see Liberty Univ. v. Geithner*, 2011 WL 3962915 (4th Cir. Sept. 8, 2011) (Anti-Injunction Act does apply to bar such a suit), *petition for cert. filed*, No. 11-438 (U.S. Oct. 7, 2011).  But the plaintiffs in this case do not even allege that they are injured by that provision of the Affordable Care Act. Indeed, except for plaintiff Rushing, it is impossible to tell from the Complaint what specific provisions, if any, of the Affordable Care Act are alleged to injure plaintiffs.  As for Rushing, instead of challenging the minimum coverage provision, he alludes to the excise tax on indoor tanning services, 26 U.S.C. § 5000B.[2]  *See* Complaint ¶ 50.  That excise tax is a tax, and the Anti-Injunction Act obviously applies to Rushing's attempt to enjoin assessment or collection of that tax and to plaintiffs' attempts more generally to enjoin assessment or collection of the many

---

[2] As we explain in point 2 below, Rushing has not adequately shown injury from that provision in his partial summary judgment motion.

other taxes that are provided for in the Affordable Care Act that they have chosen to challenge in its "entirety," tax provisions included.

Fifth, on the merits, plaintiffs have failed to state a claim upon which relief can be granted.  As we also explain in point 3 below, for similar reasons plaintiffs are not entitled to judgment as a matter of law.

> 2.    Plaintiffs Have Failed To Prove That They Have
>        Standing To Challenge The "Entirety," Or Even
>        A Single Provision, Of The Affordable Care Act

Defendants' Motion To Dismiss demonstrated that plaintiffs' claims should be dismissed for lack of jurisdiction because the first court in which they presented their claims so held and that holding has issue preclusive effect.  But even if the plaintiffs were free to relitigate the standing issue as a matter of first impression, their summary judgment motion falls far short of carrying their burden of demonstrating standing.

> a.    The Individual Plaintiffs Have Not Proven That They Have Standing

The bedrock requirement of Article III standing is an allegation of personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.  *E.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

Plaintiff Arthur Enloe has never alleged any injury at all.

Plaintiffs Donnie Harwood, Gerard Mazza, and Millard Ramsey made only conclusory allegations of injury.  Each alleged that he is "concretely and continuously harmed because he is compelled to adjust his fiscal affairs now to prepare himself to pay thousands of dollars over the next several years."  Complaint  ¶¶ 41, 46, 50, 55, 60.  But there is no allegation or explanation for how this alleged harm is due to the Affordable Care Act or even a mere statement of what

-4-

provision of the Affordable Care Act is responsible for this supposed harm.  Similarly, Harwood's claim that, as a nurse, his "work conditions and terms of employment as a health professional" are adversely affected, *id*. ¶ 41, and Mazza's allegations that, as a physician, he must "provide increased health care services to his patients without compensation," *id*. ¶ 46, identify neither how the Act is supposed to bring such results about nor even what provision or provisions of the Act are responsible.  "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  It is not just that Harwood, Mazza, and Ramsey have put forth a story of how the Act injures them that is not "plausible" (though implausibility would be reason enough to reject plaintiffs' claim, *id*.).  They have not bothered to set out what that story even is.

The Eastern District of Tennessee, which in *Shreeve* dismissed the prior incarnation of plaintiffs' claim for lack of standing, is by no means alone in reaching such a result.  In other cases challenging the Affordable Care Act, courts have dismissed for lack of standing challenges that were likewise unrooted in any plausible claim of real-life injury even where, unlike plaintiffs Harwood, Mazza, and Ramsey, the plaintiffs had at least set forth what provision of the Act they were challenging.  *E.g.*, *Baldwin v. Sebelius*, 2011 WL 3524287 (9th Cir. Aug. 12, 2011); *New Jersey Physicians, Inc. v. President of the United States*, 2011 WL 3366340 (3d Cir. Aug. 3, 2011); *Bellow v. Dep't of Health and Human Services*, 2011 WL 2462205 (E.D. Tex. June 20, 2011); *cf*., *e.g.*, *Florida ex rel. Attorney General v. Dep't of Health and Human*

*Services*, 648 F.3d 1235, 1243 (11th Cir. 2011) (standing of individual and organization to which she belonged to challenge specified provision of Act not contested on appeal where individual was found to have made specific showing of injury due to the specifically identified challenged provision), *petitions for cert. filed*, Nos. 11-393, 11-398, 11-400 (U.S. Sept. 27 & 28, 2011).

In any event, even if plaintiffs Enloe, Harding, Mazza, and Ramsey had made allegations of standing in the Complaint that would have been sufficient to withstand a motion to dismiss, neither they nor plaintiff Rushing have demonstrated that they are entitled to summary judgment on the point.[3]  As a case moves forward, a claim of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  But the individual plaintiffs have not provided a shred of evidence to back up or support the Complaint's bare allegations of standing.

Instead of providing admissible evidence to support their motion for summary judgment, plaintiffs have lodged an appendix of unsworn writings made by persons whom plaintiffs do not identify.  None of these unidentified persons claims to be one of the named plaintiffs, and none of the writings even purports to say anything at all about some supposed injury to the individuals who are plaintiffs.  Accordingly, even if these writings were suitable evidentiary support to show

---

[3] Plaintiff Rushing's allegations, issue preclusion aside, might have been barely sufficient to withstand a motion to dismiss on standing grounds insofar as he challenges the excise tax on indoor tanning services.  The motion to dismiss, of course, did not argue that Rushing's allegations in this case would not have established standing if the matter were one of first impression.  It argued instead (among other grounds for dismissal) that Rushing's claim had already been dismissed for lack of standing in *Shreeve*, that he had had every opportunity to make the necessary allegations in that case, and that, because the jurisdictional dismissal was issue preclusive, he was not entitled to a second attempt to litigate the matter even if he did now add new allegations of harm.  Mem. in Supp. of Defs' Mot. To Dismiss (ECF # 12) at 7-10.

that the unidentified non-parties would have standing if they were to file suit, those writings would still do nothing to show that the individual plaintiffs who actually are parties have personally suffered any injury.

b.    Liberty Legal Foundation Has Not Proven That It Has Standing

Plaintiffs' notion seems instead to be that the unidentified persons are members of plaintiff Liberty Legal Foundation, which is allegedly an organization; that those unidentified persons have standing; and that Liberty Legal therefore has standing as well.  This is wrong for several reasons.

In the first place, defendants object to any consideration of such "material cited to support a fact . . ." by plaintiffs that "cannot be presented in a form that would be admissible in evidence."  Rule 56(c)(2), Federal Rules of Civil Procedure.  Writings by persons unknown who have been unwilling to be identified, and who have not been, and could not have been, subject to deposition or cross-examination by defendants are not admissible in evidence.  Such unsworn and unattributed hearsay evidence should not be considered on a summary judgment motion over the non-moving parties' objection. *See*, *e.g.*, *Hernandez v. Yellow Transportation, Inc.*, 641 F.3d 118, 124-25 (5th Cir. 2011).

Second, as a matter of the substantive law of standing, an organization can have standing to sue based on injury to its members only with respect to identified members.  *Summers v. Earth Island Institute*, 555 U.S. 488, 129 S. Ct.1142, 1152-53 (2009).  Accordingly, Liberty Legal cannot rely on any injury in fact sustained by the unidentified persons.

In an attempt to escape that requirement, Liberty Legal resorts to arguing that it (allegedly) has thousands of  "members" and that surely somewhere one of these "members"

-7-

must have somehow sustained some harm or other from a law as far reaching as the Affordable

Care Act.  Pls' SJ Mem. at 14-15.  But that kind of argument was squarely rejected in *Summers*:

> The dissent proposes a hitherto unheard-of test for organizational standing: whether, accepting the organization's self-description of the activities of its members, there is a statistical probability that some of those members are threatened with concrete injury.  Since, for example, the Sierra Club asserts in its pleadings that it has more than "'700,000 members nationwide, including thousands of members in California' " who "'use and enjoy the Sequoia National Forest,'" *post*, at 1154 (opinion of BREYER, J.), it is probable (according to the dissent) that some (unidentified) members have planned to visit some (unidentified) small parcels affected by the Forest Service's procedures and will suffer (unidentified) concrete harm as a result.  This novel approach to the law of organizational standing would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm.

129 S. Ct. at 1151.

Moreover, as Justice Scalia's opinion for the Court in *Summers* put it, "[i]n part because

of the difficulty of verifying the facts upon which [the kind of probabilistic standing urged in

dissent] depends, the Court has required plaintiffs claiming an organizational standing to identify

members who have suffered the requisite harm—surely not a difficult task here, when so many

thousands are alleged to have been harmed."  *Id*. at 1152.  If the best plaintiffs can do in

discharging that task is found in the writings of the unidentified persons set out in plaintiffs'

appendix, it is not at all evident that the injury plaintiffs say they are suing about is one that

Liberty Legal's alleged members share.  Plaintiffs challenge, as beyond the authority of

Congress, the enactment of any and all legislation about either "health care" or the "health

insurance" industry.  Complaint ¶ 12.  As plaintiffs' opposition to the motion to dismiss candidly

confirms, Pls' Opp'n to Mot. To Dismiss (ECF # 16) at 24, plaintiffs' sweeping legal claim

would strike down not only the new Affordable Health Care Act, but also pre-existing federal

statutes addressing health care or health insurance, including Medicare.  That is not the claim

made by the unidentified persons.  One unidentified person complains (Pls' App. at 4) that he or

she will be affected by some unspecified "planned cuts in Medicare."  Another of these persons

unknown complains (*id*. at 8) that his or her elderly parents are very distressed by possible

unspecified changes in Medicare, and a third writes (*id*. at 15) that the federal government is in

some unspecified manner undercutting his or her Medicare Advantage plan.  Unlike plaintiffs,

who argue that the federal government should not have a Medicare program at all, these

unidentified persons argue that the federal government should be doing more to pay for citizens'

health care by having a larger or more generous Medicare program.  If these unidentified

persons' concerns and the claims plaintiffs want to make are even in the same ballpark, it is only

because they are playing on opposing teams.[4]  Liberty Legal cannot gain standing to argue that

the federal government should not be involved in health care at all by showing that it has

members who are injured if it does not get more involved.

_____

[4] Similarly, two of the unidentified persons are concerned about alleged restrictions in their "HSA accounts."  Pls' App. at 11, 13.  In some circumstances, section 223 of the Internal Revenue Code, 26 U.S.C. § 223, allows contributions to an HSA, or "health savings account," to be deducted from the measure of incomes, from whatever source derived, taxation of which is expressly allowed by the Sixteenth Amendment.  These unidentified persons are thus not complaining (as plaintiffs are) that the federal government is acting at all to legislate concerning health care, but that it is not doing enough to carve out this special federal health care deduction from the generally applicable, and unquestionably constitutional, federal income tax.

Several unidentified persons complain about cost increases or benefit reductions in their private or employer-subsidized insurance, albeit changes that, the unidentified persons report, their private insurers or employers blamed in whole or in part on the Act.  Pls' App. at 5, 8, 12. The unidentified writers' reports themselves being hearsay, those reports' reports of what the insurers and employers said are inadmissible double hearsay.  But even if the reports' reports were taken at face value, they reflect policy disagreements about how the federal government is regulating health insurance, not the different point plaintiffs flog that the federal government should not be regulating health insurance at all.

Finally, another unidentified person makes complaints that are not clearly enough stated that one can tell how, if at all, they are attributable to the Act.  Pls' App. at 6.

Even if Liberty Legal had identified actual members who actually would have standing to challenge the Act, it would not follow that Liberty Legal would also have standing. First, there is no admissible evidence of record that it is a *bona fide* membership organization. Second, to demonstrate organizational standing, an organization must not only show that it has identified members with standing, but also show that it satisfies two other conditions set forth in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977), including the "ger-mane[ness]" requirement. Some lower courts, including the Fifth Circuit, regard germaneness as a relatively "undemanding" requirement, *e.g.*, *Association of American Physicians & Surgeons v. Texas Medical Bd.*, 627 F.3d 547, 551 n.2 (5th Cir. 2010), with a "modest functional" role that would preclude only "a narrow class of cases," *Humane Society v. Hodel*, 840 F.2d 45, 56, 57 (D.C. Cir. 1988);[5] *but cf. Fleck & Associates v. City of Phoenix*, 471 F.3d 1100, 1106 (9th Cir. 2006) (more rigorous enforcement of germaneness requirement). But even under that relatively narrow interpretation of the germaneness requirement, one role it still does serve is to "ensure[ ] a modicum of concrete adverseness by reconciling membership concerns and litigation topics by preventing associations from being merely law firms with standing." *Humane Society* at 58.

A one-man law firm with want-to-be standing is all Liberty Legal appears to be. It apparently sprung into being in order to bring *Shreeve*, this suit, and a suit regarding immigration laws and to have "members" then "join" by having them pay for the right to become parties to

---

[5] *Humane Society* is the *de facto* leading case for the view that the germaneness require-ment should be construed narrowly. The Fifth Circuit's adoption of that view in *American Physicians* does little more than cite *Bldg. & Constr. Trades Council v. Downtown Dev., Inc.*, 448 F.3d 138 (2nd Cir. 2006), which in turn discussed *Humane Society* at length and adopted its reasoning, *see id.* at 146-48.

one or more of the suits.[6]  This is not an organization seeking to serve the common interests that

had already brought its members together, like the apple growers in *Hunt* or the auto workers in

*Auto Workers v. Brock*, 477 U.S. 274 (1986), which then sought to bring an action arising out of

the common characteristics of those members.  Liberty Legal appears instead to be merely a

website a lawyer uses to recruit clients.  *Cf. Washington Legal Foundation v. Leavitt*, 477 F.

Supp. 2d 202, 211 (D.D.C. 2007) (claim to associational standing weakened where association

first decides to file suit and only later acquires the members who are injured).

The Supreme Court has distinguished between, on the one hand, a proper organizational

standing case, in which an organization brings together its specialized expertise and resources

and, on the other hand, a mere "ad hoc union of injured plaintiffs who may be linked only by

their common claims."  *Auto Workers*, 477 U.S. at 289.  This is the latter kind of case, an ad hoc

union of plaintiffs who are linked only by whatever commonality their claims may have (not

much, judging from the unidentified persons' writings).  As *Auto Workers* was thus careful to

address, a proposed fusing of such ad hoc common claims should proceed, if at all, through the

class action rules.  An attorney's creating a "Foundation" for the purpose of bringing the suit and

then signing up clients willing to pay to be part of his case thus does not satisfy the requirements

of organizational standing set out in *Auto Workers* and *Hunt*.  This Court ought not approve

---

[6] Although Liberty Legal has recently added an option to its website to "become a member" without "join[ing]" any of its suits, that option was not available at the time the suit was filed.  *Compare*  https://www.libertylegalfoundation.net/join-the-oca/ (last visited Oct. 19, 2011) (current version of website) *with* hhttp://web.archive.org/web/20110329183738/http:/www.libertylegalfoundation.com/obamacare-class-action/ (March 29, 2011, version of website)  (Exhibit 2), Appendix at 5; http://web.archive.org/web/20110226005236/http:/www.libertylegalfoundation.com/ (similar website page as of Feb. 26, 2011) (Exhibit 3), Appendix at 7; *and* http://web.archive.org/web/20101014031229/http:/www.libertylegalfoundation.com/ ("Overturn Obamacare" webpage from Oct. 14, 2010) (Exhibit 1), Appendix at 2-3.

Liberty Legal's attempt to use a loose form of organizational standing to bypass the substance and safeguards of the class action.[7]

      c.        Even If Plaintiffs Had Demonstrated Standing With Respect
                   To One Or More Provisions Of The Affordable Care Act,
                   That Would Not Provide Standing To Challenge Other
                   <u>Provisions Of The Act Or To Challenge The Act In Its Entirety</u>

"'[S]tanding is not dispensed in gross.'" *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008), *quoting Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996). Even where a plaintiff has shown that it has standing to challenge one provision of a statute, if that plaintiff also wishes to challenge another provision of the statute, he or she must make an additional showing of injury from that second statutory provision. *See Davis* at 734. Thus, even if plaintiffs had demonstrated standing to challenge one or more specific provisions of the Affordable Care Act, that would not give them standing to challenge other provisions of the Act that do not injure them, let alone give them standing to challenge the Act in its "entirety."

One example of a provision of the Affordable Care Act that does not injure plaintiffs is section 1556, which extends a rebuttable presumption that makes claims for Black Lung benefits easier to prove. A coal mining company that will be liable for successful Black Lung benefit claims may have standing to challenge that provision. But, unless plaintiff Liberty Legal is a front for a coal company (and there is no reason to believe that it is), none of the plaintiffs has any interest in the constitutionality of section 1556. If the constitutionality of that provision is to be tested, Article III requires that the parties should have actual concrete interests at stake, coal

---

[7] By no means do defendants suggest that the claims of every person Liberty Legal might claim as a member could be **properly** jammed together as a single unwieldy omnibus class action. The dispute between plaintiffs, who want neither Medicare nor any other federal laws regarding health care, and the unidentified persons, who want more federal Medicare subsidies, is a telling illustration of the conflict among putative members of any such class.

mine companies with an interest in attacking section 1556, former coal miners with lung disease with an interest in defending it. Indeed, that is exactly what has happened, and that provision of the Affordable Care Act has been sustained on the merits. *Keene v. Consolidation Coal Co.*, 645 F.3d 844, 848-51 (7th Cir. 2011). There is no reason for this Court to second-guess that judgment at the behest of persons who are not coal companies or coal miners and who have no interest in the outcome other than that of gadflies. More generally, challenges to provisions of the Act that do not injure plaintiffs should be left to persons with some actual stake in the controversy.

      3.      This Court Should Neither Overrule The Supreme Court's Unanimous Decision in *Wickard v. Filburn* Nor Hold The Entirety Of The Affordable Care Act Unconstitutional

Plaintiffs concede that under the Supreme Court's current precedents, the Affordable Care Act is constitutional. Pls' SJ Mem. at 7-8. That concession is by itself sufficient to justify denial of their summary judgment motion on the merits: "[T]he hierarchy of the federal court system" is itself created by the Constitution and Congress. Admittedly, the Members of [the Supreme] Court decide cases by virtue of their commissions, not their competence. . . . But unless we wish anarchy to prevail within the federal judicial system, a precedent of [the Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (internal quotation omitted).

Though no more than that need be said or decided if the merits are to be reached, defendants do not mean by omission to suggest that plaintiffs are correct in their views that only *Wickard v. Filburn*, 317 U.S. 111 (1942), prevents a recognition that the entirety of the Affordable Care Act is unconstitutional and that the Supreme Court is somehow likely to overrule its own unanimous decision in *Wickard*.

-13-

In the first place, many of the provisions of the Affordable Care Act rest firmly on constitutional bases other than the Commerce Clause that was authoritatively construed in *Wickard*. The Medicaid provisions, for example, rest on Congress' taxing and spending authority. *See Florida ex rel. Attorney General v. Dep't of Health and Human Services*, 648 F.3d 1235, 1263 (11ᵗʰ Cir.), *petitions for cert. filed*, Nos. 11-393, 11-398, 11-400 (U.S. Sept. 27 & 28, 2011). And the only specific provision of the Act even alluded to in the Complaint, the excise tax on indoor tanning services, is squarely within Congress's power to tax.[8]

But even such portions of the Affordable Care Act, if there are any, that depend solely on the Commerce Clause (read together, of course, with the Necessary and Proper Clause) do not depend solely on the construction of the Commerce Clause set forth in the unanimous opinion in *Wickard*. Even if *Wickard* were ignored and put to one side, still no one would reasonably reach plaintiffs' conclusion (Complaint ¶¶ 12-13), that Congress cannot legislate at all concerning health care and health insurance.

Health care accounts for more than a sixth of the nation's economy. Drugs, treatments, medical equipment, ambulances, and patients all cross state lines. *See, e.g.*, *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738 (1976). No reasonable construction of the Constitution, with or without *Wickard*, before or after *Wickard*, would render Congress categorically powerless to pass any law at all with respect to that enormous stream of commerce. The framers

---

[8] The minimum coverage provision, section 1501 of the Affordable Care Act, 26 U.S.C. § 5000A, which has been challenged in many cases, though not by the Complaint in this case, is likewise a proper exercise of Congress' power to tax, *Liberty Univ. v. Geithner*, 2011 WL 3962915, at *16-*21 (4ᵗʰ Cir. Sept. 8, 2011) (Wynn, J., concurring), *petition for cert. filed*, No. 11-438 (Oct. 7, 2011), although a number of lower courts have thought otherwise, *e.g.*, *Florida ex rel. Attorney General v. Dep't of Health and Human Services*, 648 F.3d 1235, 1313-20 (11th Cir. 2011), *petitions for cert. filed*, Nos. 11-393, 11-398, 11-400 (U.S. Sept. 27 & 28, 2011).

surely understood as well as we do today that illness and disease do not respect state boundaries and that health care can be a fit subject for the national legislature to address.  The first President to sign a law making a federal health care service available "to any citizen of the United States" was not Barack Obama, or Lyndon Johnson, or even Franklin Delano Roosevelt.  It was James Madison.  An Act to Encourage Vaccination, ch. 37, 2 STAT. 806 (1813) (repealed 1822).  Plaintiffs' contention that only the States may enact legislation regarding health care and health insurance is wrong.[9]

    4.    Plaintiffs' Alternative Motion For § 1292(b) Certification
           Need Not Be Reached And Should Not Be Granted

As an alternative to their summary judgment motion, plaintiffs have moved in the alternative that an order denying plaintiffs summary judgment be certified for an immediate, and extraordinary, discretionary appeal pursuant to 28 U.S.C. § 1292(b).

That alternative motion need not be reached.  For the reasons set forth in defendants' motion to dismiss, this action ought to be dismissed.  The order of dismissal will be a final appealable order.  There should thus be no need to reach plaintiffs' alternative motion for a section 1292(b) certification.

In the event that the motion to dismiss is not granted prior to consideration of plaintiffs' alternative motion for a certification pursuant to 28 U.S.C. § 1292(b), plaintiffs' alternative

---

[9] We do not, of course, contend that every statute that has something or other to do with either health care or health insurance is necessarily within the scope of congressional authority.  An examination of a particular provision under constitutional principles would be necessary.  But plaintiffs, instead of examining (or even citing in the Complaint) any particular provisions of the Affordable Care Act, contend that each and every and any law that addresses health care or health insurance is always, in its entirety, beyond the authority of the federal legislature.  Complaint ¶¶ 12-13.  Under plaintiffs' extreme view, even Medicare would be unconstitutional.  Pls' Opp. to Mot. to Dismiss (ECF # 16) at 24.  There is no such categorical shackle on the power of Congress.

motion should be denied.  Plaintiffs' partial summary judgment motion is frivolous.  There is no "reasonable ground for difference of opinion," 28 U.S.C. § 1292(b), on that point.

CONCLUSION

For the reasons stated above and in the brief supporting defendants' motion to dismiss, plaintiffs' motion for partial summary judgment should be denied.  The Court need not reach plaintiffs' alternative motion for a statement pursuant to 28 U.S.C. § 1292(b), because the Court should enter a final judgment dismissing the action for the reasons stated in defendants' pending motion to dismiss.  In the event that the motion to dismiss is not granted prior to consideration of plaintiffs' alternative motion for a statement pursuant to 28 U.S.C. § 1292(b), for the reasons stated above, plaintiffs' alternative motion should be denied.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JAMES T. JACKS
United States Attorney

SHEILA M. LIEBER
Deputy Branch Director

/s/ *Brian G. Kennedy*
BRIAN G. KENNEDY (D.C. Bar No. 228726)
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel.: (202) 514-3357 Fax: (202) 616-8470
Email:  Brian.Kennedy@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2011, I electronically submitted the foregoing

document with the clerk of court for the U.S. District Court, Northern District of Texas, using

the electronic case filing system of the court. I hereby certify that I have served all counsel

and/or pro se parties of record electronically or by another manner authorized by Federal Rule of

Civil Procedure 5 (b)(2).

<u>/s/ Brian G. Kennedy</u>
Brian G. Kennedy

-17-